FILED BY ___ D.C.
05 DEC 22 PM 4:33
THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

CURTIS L. BYRD, JR.,

Plaintiff,

vs. No. 04-2998-D/P

LESLIE I. BALLIN, et al.,

Defendants.

ORDER DENYING PLAINTIFF'S MOTION TO SERVE OTHER DEFENDANTS
AND
ORDER DISMISSING COMPLAINT WITH RESPECT TO DEFENDANTS
BURNETT, JOHNSON, AND COOK

Plaintiff Curtis L. Byrd, Jr. commenced this action by filing a legal malpractice complaint in the Shelby County Circuit Court, docket number CT-005216-04, on September 13, 2004 against defendant Leslie I. Ballin, an attorney who represented Byrd in a federal criminal prosecution arising out of this district. See Notice of Removal, Ex. A. On or about November 15, 2004, plaintiff filed an amended complaint that, for the first time, added the National Bank of Commerce ("NBC") and three individuals, Sheila Burnett, Latoria Johnson, and Patricia Cook, as defendants. See Notice of Removal, Ex. B. NBC was served with the amended complaint on November 19, 2004 and removed this action to federal court, pursuant to 28 U.S.C. § 1446(d), on December 9, 2004.

On January 18, 2005, plaintiff filed a motion seeking leave to serve the remaining defendants. As a preliminary matter,

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 12/27/05

83

plaintiff's motion is based on the erroneous assumption that the operative pleading in this matter is the second amended complaint, which was filed without leave of Court on December 20, 2004. In an order dated August 26, 2005, the Court issued an order striking the proposed amendment for reasons not necessary to repeat at this time. Nonetheless, plaintiff's motion is not moot, as defendants Burnett, Johnson, and Cook have not been served.[1] Defendant Ballin filed a response in opposition to that motion on January 21, 2005, accompanied by a memorandum of law.[2] Plaintiff filed a reply, without leave of Court, on January 24, 2005.[3]

As a preliminary matter, the version of the complaint that was removed to federal court on December 9, 2004 does not provide addresses for these individuals, making it impossible for the Clerk to issue summonses at the present time.

In evaluating whether to issue summonses, the Court screens in forma pauperis complaints pursuant to 28 U.S.C. § 1915(e)(2). This case was removed to federal court by the defendant, who paid the filing fee, and, therefore, § 1915(e)(2) is inapplicable regardless of whether plaintiff was granted in forma pauperis status in state

---

[1] Pursuant to Local Rule 83.7(a)(2), summonses are not issued in cases filed by pro se plaintiffs until the existence of subject-matter jurisdiction has been confirmed.

[2] It is difficult to understand why defendant Ballin has taken it upon himself to respond to this motion, which does not effect his interests in the least, and which is necessary only because of the local rule limiting the issuance of summonses to pro se litigants. Because the defendants who have appeared in this action have no perceptible legal interest in whether process issues for codefendants on unrelated counts, the requirement of a certificate of consultation has no logical relevance to this motion. In the future, it is to be hoped that this defendant will refrain from filing needless motions.

[3] In an order issued on February 4, 2005, the plaintiff was cautioned not to file further reply briefs without leave of Court. 02/04/05 Order at 2 n.3.

court. Although the standards for screening removed cases have not been clearly articulated, the Court applies the standards applicable to paid complaints filed in federal court.

According to the Sixth Circuit, "a district court may not sua sponte dismiss a complaint where the filing fee has been paid unless the court gives the plaintiff the opportunity to amend the complaint." Apple v. Glenn, 183 F.3d 477, 478 (6th Cir. 1999) (per curiam); see also Benson v. O'Brian, 179 F.3d 1014 (6th Cir. 1999); Tingler v. Marshall, 716 F.2d 1109, 1112 (6th Cir. 1983). There is an exception to this general rule, however, that permits a district court to dismiss a complaint "for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." Apple, 183 F.3d at 478 (citing Hagans v. Lavine, 415 U.S. 528, 536-37 (1974)).

In order to put plaintiff's claims against those defendants in context, it is necessary briefly to set forth their role in the criminal cases against Byrd, United States v. Byrd, No. 01-20325-1-Ma (W.D. Tenn.), in which Byrd was charged with violating 18 U.S.C. §§ 2 and 1341, and United States v. Byrd, No. 01-20332-1-Ma (W.D. Tenn.), in which Byrd was charged with violating 18 U.S.C. §§ 2, 513(a), and 1028(a)(2). On August 8, 2002, pursuant to a written plea agreement, Byrd entered a guilty plea to count 3 in case no. 01-20325-1, which charged him with mail fraud, in violation of 18 U.S.C. §§ 2 and 1341, in connection with a Uniform Residential Loan

Application and fraudulent supporting documents from Nicole Felts to Southeastern Mortgage of Tennessee, Inc. Paragraph One of the Plea Agreement provided that "[t]he United States will dismiss the remaining counts of Criminal Number 01-20325 and all counts from 01-20332 at sentencing." Paragraph 2 of the Plea Agreement provided that, with one exception not relevant here, "[t]he Sentencing Guidelines will be computed on the total amount of relevant conduct, including any dismissed counts." District Judge Samuel H. Mays, Jr. conducted a sentencing hearing on January 17, 2003, at which time Byrd was sentenced to eighteen (18) months imprisonment, to be followed by a three-year period of supervised release. Judgment was entered on February 4, 2003. Byrd was taken into custody following the sentencing hearing, and he was released on May 10, 2004 after serving his entire sentence.

The claims against Burnett, Johnson, and Cook arise from a dismissed count of the indictment in case no. 20325. The Sixth Circuit summarized the discussion of that count at the sentencing hearing as follows:

> The PSI listed a second loan attributed to Byrd for $74,000 in the name of Shela Burnet [sic]. Byrd had been charged in Counts 1 and 6 of the indictment with submitting a Uniform Loan Application and other fraudulent supporting documents to NBC from Burnet. Count 6 charged that Byrd knowingly made a material false statement in a home mortgage loan application that Burnet had been employed by Southeast Investment for more than two years. According to the PSI, NBC suffered a loss of $20,667.69 as a result of the Burnet loan.
>
> . . . .
>
> At the sentencing hearing, the trial court considered Byrd's objections to the four-point increase for a loss of more than $10,000 but less than $30,000. Byrd argued that

> the loss from the Burnet loan could not be considered relevant conduct for purposes of sentencing because the government had not produced sufficient proof that he had written the false verification of employment for Burnet. In his written objection to the PSI, Byrd contended that, absent the four-point increase for the loss from the Burnet loan, his total offense level should have been six after adding a two-point enhancement for identity theft and subtracting two points for acceptance of responsibility. In support of his argument, Byrd introduced a report from Thomas Vastrick, a handwriting expert, concluding that Byrd had not written the request for verification of employment. The government responded by introducing the testimony of Agent Steve Orr of the United States Postal Inspection Service, who testified that he had interviewed Burnet after receiving a file prepared by NBC. This file included (1) W-2 statements indicating that Burnet had been employed at Southeast Investment, (2) a fraudulent credit reference from Memphis Light Gas and Water, and (3) a residential loan application. Orr stated that Burnet told him she had met with Byrd three times and that Byrd ultimately obtained the Burnet loan from NBC.
>
> . . . .
>
> The district court concluded that the Burnet loan was not relevant conduct for purposes of sentencing and declined to add the proposed four-level enhancement for a loss of more than $10,000 but less than $30,000. The only evidence linking Byrd to the verification of employment was Burnet's statement to Agent Orr, and the court indicated that it was not comfortable relying on her hearsay statements to support the four-point increase. The court also noted that if the Burnet loan was not considered relevant conduct, there was no basis for ordering restitution.

United States v. Johnson, et al., 103 Fed. Appx. 866, 869 (6th Cir. July 8, 2004).

The complaint alleges that Johnson is Burnett's daughter and the co-owner of L&R Investments. Cook is not identified in the complaint, but she apparently had some involvement in the mortgage loan business. The complaint alleges that Johnson creased a false credit reference letter for Burnett, along with a fraudulent Southeastern Investments certificate of employment and check stubs.

In March 2000, Burnett and Johnson allegedly gave these fraudulent documents to Cook in an attempt to obtain a home loan. At Johnson's request, Cook did not perform any verification of the loan information and, instead, entered into an agreement with Burnett and Johnson to defraud NBC. Am. Compl. at p. 5. After NBC subsequently began investigating loans originated by Cook, they agreed that the blame would be directed towards plaintiff in order to save themselves from prosecution. Id. at p. 6.

The amended complaint asserts claims against Burnett, Johnson, and Cook pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. (Count 4), 42 U.S.C. § 1985(2) & (3) (Count 6), and 42 U.S.C. § 1986 (Count 7). The complaint also asserts a claim pursuant to 42 U.S.C. § 1983 against Burnett (Count 5).

The RICO Claim. The RICO claim alleges that defendants Burnett, Johnson, and Cook violated 18 U.S.C. § 1962(c), which provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted). For the reasons that follow, the RICO claim fails to state a claim.

An "enterprise" "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The term "'person' includes any individual or entity capable of holding a legal or beneficial interest in property." Id., § 1961(3). "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001); see also Fleischhauer v. Feltner, 879 F.2d 1290, 1297 (6th Cir. 1989) ("The 'person' and the 'enterprise' must be separate and different entities. . . . This distinction must be described in the pleadings.") (citations omitted). The complaint has "failed to properly plead and/or identify any enterprise, much less specify the existence of an 'enterprise' separate and distinct from the . . . RICO 'persons.'" Guzowski v. Hartman, 969 F.2d 211, 216 (6th Cir. 1992). For that reason alone, count 4 fails to state a claim. Id. at 215-16.[4] It is, therefore, DISMISSED.

---

[4] Although it is possible that L&R Investments is intended to be the enterprise, defendants Johnson and Cook are not employed by L&R Investments. Moreover, the Supreme Court has held that "one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 183 (1993). The complaint does not allege that Johnson and Cook are "associated with" L&R or that she conducted or participated, directly or indirectly, in the conduct of L&R's affairs. Moreover, even if it is assumed that the complaint alleges that Burnett and Johnson personally committed unlawful acts, the complaint does not even allege that Burnett and Johnson conducted the affairs of L&R Investments through a pattern of racketeering activity. With the exception of the fraudulent credit reference on L&R Investment letterhead, L&R Investments apparently had no involvement in the other alleged predicate acts.

The § 1983 Claim. Count 5 of the complaint purports to assert a claim against Burnett pursuant to 42 U.S.C. § 1983 based on her alleged "false and misleading statements to [Postal Inspector Stephen Orr and Special Agent Stephanie Orr] that "caused Byrd the loss of his due process rights, equal protection of the laws, and unlawful seizure while on bond for 1 year." Am. Compl. at p. 9.

"A § 1983 plaintiff may not sue purely private parties." Brotherton v. Cleveland, 173 F.3d 552, 567 (6th Cir. 1999). Thus, "[i]n order to be subject to suit under § 1983 claim, defendant's actions must be fairly attributable to the state." Collyer v. Darling, 98 F.3d 211, 231-32 (6th Cir. 1997). Nothing in the complaint provides any basis for attributing state action to defendant Burnett in connection with her alleged false statements to federal investigators. Accordingly, because Count 5 fails to state a claim pursuant to 42 U.S.C. § 1983, it is DISMISSED.

The § 1985(2) & (3) Claim. Count 6 of the complaint asserts that, by allegedly agreeing to falsely implicate Byrd in their scheme to defraud NBC, defendants Burnett, Johnson, and Cook conspired "to deny Byrd his due process rights, equal protection an[d] immunities of the law, and resulted in illegal seizure." Am. Compl. at p. 9.

The complaint does not state a claim pursuant to § 1985(3), which prohibits a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws."

> [I]n order to state a cause of action under § 1985, the plaintiff must allege that the defendants (1) conspired

> together, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy, (4) which caused injury to person or property, or a deprivation of any right or privilege of a citizen of the United States, and (5) and that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus.

Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999).

The complaint, even construed liberally, Haines v. Kerner, 404 U.S. 519 (1972), does not allege that defendants Burnett, Johnson, and Cook were motivated by racial, or other class-based, invidiously discriminatory animus. See, e.g., Brace v. Ohio State Univ., 866 F. Supp. 1069 (S.D. Ohio 1994) ("The phrase 'equal protection of the laws' in § 1985(3) applies only to discrete and insular minorities that receive special protection under the Equal Protection Clause due to inherently personal characteristics. . . . Where the group of which plaintiff is a member is not one which has traditionally received special protection under the suspect classification analysis of the Fourteenth Amendment, § 1985(3) does not apply.") (citation omitted); see also Huebschen v. Department of Health & Social Servs., 716 F.2d 1167, 1171 (7th Cir. 1983) ("A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual."). Therefore, count 6 fails to state a claim pursuant to 42 U.S.C. § 1985(3).

Count 6 also purports to assert a claim pursuant to 42 U.S.C. § 1985(2), which provides as follows:

> (2) Obstructing justice; intimidating party, witness, or juror
>
> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(2).

Section 1985(2) consists of two separate provisions, separated by a semicolon. Williams v. St. Joseph Hosp., 629 F.2d 448, 451 (7th Cir. 1980). See generally Kush v. Rutledge, 460 U.S. 719, 724-25 (1983). "The first clause of § 1985(2) . . . forbids a conspiracy to deter a party or witness in a federal court from attending or testifying in court, punishing parties or witnesses for having attended or testified in federal court, or influencing or punishing federal jurors." Warner v. Greenebaum, Doll & McDonald, 104 Fed. Appx. 493, 497 (6th Cir. June 23, 2004); see also Miller v. Dowagiac Police Dep't, No. 9602141, 1997 WL 640127, at *5 (6th Cir. Oct. 14, 1997); Alexander v. Patterson, No. 92-6434, 1994 WL 419592, at *1 (6th Cir. Aug. 10, 1994) (citing Rutledge v. Arizona Board of

Regents, 859 F.2d 732, 735 (9th Cir. 1988). The elements of a deterrence claim pursuant to the first clause of § 1985(2) "are (1) a conspiracy, (2) to deter testimony by force or intimidation, and (3) injury to the plaintiff." Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1126 (10th Cir. 1994).[5]

The complaint in this case fails to state a deterrence claim. The complaint does not allege that defendants Burnett, Johnson, and Cook were themselves witnesses in federal court or before the federal grand jury. Instead, it appears that the "witnesses" referred to are Stephen Orr and Stephanie Orr, who allegedly testified before a federal grand jury and, in the case of Stephen Orr, at plaintiff's sentencing hearing, on the basis of allegedly false information provided by Burnett, Johnson, and Cook. However, the complaint does not allege the use of force and intimidation against these witnesses or against any other actual or potential witness. See, e.g., Dooley v. Reiss, 736 F.2d 1392, 1396 (9th Cir. 1984) ("Plaintiffs' allegations that defendants conspired to commit perjury and to conceal evidence fails to state a claim for relief under section 1985(2). The alleged actions did not influence or seek to influence a juror by force, intimidation, or threat.") (footnote omitted). Accordingly, the complaint fails to state a claim pursuant to 42 U.S.C. § 1985(2).[6]

---

[5] The complaint does not allege that the defendants conspired to punish any witness for testifying in federal court.

[6] The second clause of § 1985(2), which "applies to conspiracies to obstruct the course of justice in state courts," Bragg v. Madison, 20 Fed. Appx. 278, 285 (Aug. 31, 2001), is plainly inapplicable here as no state-court lawsuit is involved. Moreover, in contrast to the first clause of § 1985(2), in order to (continued...)

For all the foregoing reasons, the Court DISMISSES count 6.

The § 1986 Claim. Finally, count 7 of the complaint asserts a claim against defendants Burnett, Johnson, and Cook pursuant to 42 U.S.C. § 1986 because "[t]hese individuals each knew of the frauds about to be perpetrated by the others. They also each knew of the scheme to deceive Orr [sic] and wrongfully implicate Byrd. Each person neglected to prevent any of these acts from happening." Am. Compl. at p. 9.

"Section 1986 establishes a cause of action against anyone, who has knowledge of a conspiracy under § 1985, and 'having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do.'" Radvansky v. City of Olmstead Falls, 395 F.3d 291, 314 (6th Cir. 2005). Because the complaint does not state a claim under § 1985, it necessarily follows that there can be no liability under § 1986. Id. at 315; Bass, 167 F.3d at 1051 n.5. The Court therefore DISMISSES count 7.

[6] (...continued)
state a claim under the second part of § 9185(2), "'there must be some racial, or perhaps otherwise class-based, invidiously discriminating animus behind the conspirators' actions.'" Williams, 629 F.2d at 451 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)); see also Kush, 460 U.S. at 726.

As a result of this order, defendants Burnett, Johnson, and Cook are terminated as parties to this action. Therefore, plaintiff's motion for leave to serve these defendants is DENIED.

IT IS SO ORDERED this 22 day of December, 2005.

BERNICE B. DONALD
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 83 in case 2:04-CV-02998 was distributed by fax, mail, or direct printing on December 27, 2005 to the parties listed.

---

Tim Edwards
GLASSMAN EDWARDS WADE & WYATT, P.C.
26 N. Second Street
Memphis, TN 38103

Curtis L. Byrd
1395 Worthington Circle
Memphis, TN 38114

Van Davis Turner
GLANKLER BROWN
One Commerce Sq.
Ste. 1700
Memphis, TN 38103

Larry Montgomery
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Jimmy Moore
CIRCUIT COURT, 30TH JUDICIAL DISTRICT
140 Adams Ave.
Rm. 224
Memphis, TN 38103

R. Scott McCullough
GLASSMAN EDWARDS WADE & WYATT, P.C.
26 N. Second Street
Memphis, TN 38103

Richard Glassman
GLASSMAN EDWARDS WADE & WYATT, P.C.
26 N. Second Street
Memphis, TN 38103

Honorable Bernice Donald
US DISTRICT COURT